UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: ____________________

EMALY BRANTINGHAM,

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.
d/b/a ROYAL CARIBBEAN GROUP,

Defendant.
________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, EMALY BRANTINGHAM ("Plaintiff"), through undersigned counsel, files suit against Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, for damages and alleges:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, EMALY BRANTINGHAM, is a resident and citizen of Charlotte County, Florida and is otherwise sui juris.

2. Defendant, ROYAL CARIBBEAN CRUISES LTD., doing business as ROYAL CARIBBEAN GROUP ("Royal Caribbean" or "Defendant"), is a foreign corporation that maintains its principal place of business in Miami-Dade County, Florida. Defendant does business in the State of Florida and, at all times material hereto, was and is doing business in Florida, and regularly conducts substantial and not isolated business in this district.

3. At all material times, Defendant owned, operated, managed, maintained, controlled, crewed, and/or was otherwise responsible for the vessel known as the STAR OF THE

SEAS, and operated it on navigable waters.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, as the incident giving rise to this action occurred aboard a vessel on navigable waters and bears a significant relationship to traditional maritime activity.

5. Venue is proper in this district because Defendant maintains its principal place of business in Miami-Dade County, Florida, regularly conducts substantial business within this district, and a substantial part of the events and transactions giving rise to this action are connected to this district. Further, the passenger ticket contract issued by Defendant contains a forum-selection clause requiring that claims of this nature be filed in the United States District Court for the Southern District of Florida, Miami Division, and Plaintiff files suit in this forum because that forum-selection clause compels it, and demands a jury trial in accordance with the savings to suitors clause.

6. All conditions precedent to the filing and maintenance of this action have occurred, have been performed, or have otherwise been waived.

## GENERAL ALLEGATIONS OF FACT

7. On or about October 9, 2025 (the "Incident Date"), Plaintiff, EMALY BRANTINGHAM, was a fare-paying passenger aboard the STAR OF THE SEAS (the "Vessel").

8. At all material times, Plaintiff was a passenger lawfully aboard the Vessel and was in a location where she was invited and reasonably expected to be.

9. At all material times, Defendant offered the Storm Chasers waterslide, a mat-racing waterslide located in the Category 6 waterpark aboard the Vessel, for use by its passengers (the "subject waterslide"). The subject waterslide was selected, approved, installed, operated, supervised, inspected, and/or maintained by Defendant and/or its agents, employees, and

crewmembers, and was within Defendant's exclusive care, custody, and control.

10. On the Incident Date, Plaintiff rode the subject waterslide headfirst, as Defendant's crewmembers instructed and/or required. As Plaintiff traveled through the last portion of the subject waterslide, near its exit, she was violently slammed into the side of the slide and struck the left side of her head.

11. The subject waterslide was not operated and/or maintained in a manner that allowed Plaintiff to traverse it safely, and the subject waterslide constituted a dangerous condition for reasons that include, but are not limited to:

a. The subject waterslide forcefully propelled Plaintiff into its sidewall near its exit, rather than allowing her to safely complete the ride;

b. Defendant's crewmembers instructed and/or required riders, including Plaintiff, to go down the subject waterslide headfirst, even though riding headfirst was an unreasonably dangerous method of going down the slide because it placed the rider's head in the leading position and exposed it to direct impact with the walls of the slide;

c. The operation, water flow, configuration, and/or condition of the subject waterslide near its exit caused riders, including Plaintiff, to be thrown or forced into its sidewall;

d. The subject waterslide was improperly configured for the area in which it was used, including the portion of the slide near its exit;

e. The subject waterslide was unreasonably narrow, constricted, and/or tightly curved near its exit, such that riders' heads were at an unreasonably high risk of striking the walls of the slide;

f. The walls of the subject waterslide were made of unreasonably hard materials without adequate padding or other protective features, such that riders who struck their heads on them were exposed to an unreasonable risk of serious injury;

g. The subject waterslide lacked a mechanism and/or proper water pressure to

allow riders to slow down safely as they approached the end of the slide;

h. The subject waterslide lacked a reasonably safe exit area in which riders could slow down, stop, and exit safely;

i. The subject waterslide was not reasonably inspected, tested, maintained, and/or adjusted to ensure that riders could traverse it without being thrown or forced into its sidewall;

j. Defendant did not adequately staff, supervise, monitor, or control the operation of the subject waterslide, including at the end of the slide; and/or

k. Defendant did not warn riders, including Plaintiff, of the risk of being forcefully propelled into the sidewall of the subject waterslide near its exit, or of the dangers of going down the slide headfirst.

12. The foregoing dangerous condition(s) were not open and obvious to Plaintiff, and Plaintiff had no way to know or appreciate that the subject waterslide would forcefully propel her into its sidewall until after she had already been injured.

13. As a direct and proximate result of the incident, Plaintiff sustained serious injuries, including a head contusion and post-concussive symptoms, including headaches, nausea, dizziness, head tenderness, and swelling. Plaintiff required shipboard medical evaluation and treatment, including a diagnostic skull X-ray, medications, and follow-up care, and subsequently required emergency-department treatment, where she was diagnosed with postconcussive syndrome.

**<u>DEFENDANT'S NOTICE</u>**

14. Prior to and at the time of Plaintiff's incident, Defendant knew or should have known of the dangerous condition(s) outlined above for reasons that include, but are not limited to:

a. Defendant owned, operated, and controlled the subject waterslide, including

its operating parameters, water flow, rider dispatch, and supervision, and therefore knew or should have known how riders traveled through the subject waterslide, including through the portion near its exit where Plaintiff was injured;

b. Defendant, through its crewmembers, instructed and/or required riders, including Plaintiff, to go down the subject waterslide headfirst, and therefore knew or should have known that riders' heads were in the leading position and exposed to impact with the walls of the slide;

c. Defendant's crewmembers inspected, tested, operated, supervised, and maintained the subject waterslide on a recurring basis, and through those activities Defendant acquired actual and/or constructive knowledge of the manner in which riders were propelled through the subject waterslide near its exit;

d. Defendant stationed attendants at the subject waterslide and/or maintained closed-circuit television or other surveillance equipment monitoring it, through which Defendant observed or could have observed riders being forced into the sidewall near its exit before Plaintiff's incident;

e. Defendant received passenger and/or crewmember reports, complaints, and/or incident reports regarding riders striking the walls of the subject waterslide and/or other waterslides of the same or substantially similar design aboard Defendant's vessels;

f. Upon information and belief, Defendant received operating, inspection, and maintenance manuals, specifications, and/or guidance for the subject waterslide from its manufacturer and/or installer addressing the safe operation of the slide and the risks posed to riders when it was not properly operated, inspected, and maintained; and/or

g. Defendant maintains rider rules, posted signage, operating procedures, and training programs for its waterslide attractions, demonstrating that Defendant was aware that riders could be seriously injured on its waterslides if they were not properly operated, supervised, inspected, and maintained.

15. At all times material, Royal Caribbean knew or should have known that it was

highly probable for passengers such as Plaintiff to be injured while riding the Storm Chasers waterslide, considering prior incidents occurring on the Storm Chasers waterslide aboard the Vessel's sister ship under similar circumstances. The Star of the Seas and the Icon of the Seas are Icon-class vessels. Upon information and belief, sister ships within the Icon class are built, designed, constructed, and outfitted according to substantially identical or substantially similar standards, specifications, materials, and finishes, including the same Category 6 waterpark and the same or substantially similar Storm Chasers waterslide. For instance:

a. On or about February 5, 2024, passenger M.R. was severely injured while using the Storm Chasers waterslide aboard Defendant's vessel Icon of the Seas, after Defendant's crewmember(s) allegedly instructed her to go down the slide headfirst and failed to adequately assist and instruct her in using the slide safely. Upon information and belief, the waterslide on which this prior incident occurred is identical or substantially similar to the subject waterslide on which Plaintiff was injured. See M.R. v. Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group, Case No. 1:24-cv-24950 (S.D. Fla.).

16. Royal Caribbean also knew or should have known that it was highly probable for passengers such as Plaintiff to be injured while riding its waterslides, including by striking the interior of the slide and at or near the end of the slide, considering prior incidents occurring aboard other vessels in Defendant's fleet under similar circumstances, including:

a. On or about October 3, 2019, passenger B.P. was severely injured while participating in the waterslide activity aboard Defendant's vessel Navigator of the Seas, where the waterslide was allegedly improperly configured, lacked a reasonably safe landing and exit area, and lacked a mechanism or proper water pressure to allow riders to slow down as they approached the end of the slide. See *B.P. v. Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group, Case No. 1:20-cv-23652-RNS (S.D. Fla.)*.

b. On or about June 9, 2022, passenger D.R. struck his head multiple times on

the interior of the Perfect Storm waterslide aboard Defendant's vessel Symphony of the Seas while following a crewmember's riding instructions, allegedly sustaining a concussion and whiplash. See *D.R. v. Royal Caribbean Group, Case No. 1:22-cv-23991 (S.D. Fla.)*.

c. On or about May 13, 2023, passenger E.R. was severely injured while participating in the waterslide activity aboard Defendant's vessel Liberty of the Seas, where the waterslide was allegedly improperly configured, lacked a reasonably safe landing and exit area, and lacked a mechanism or proper water pressure to allow riders to slow down as they approached the end of the slide. See *E.R. v. Royal Caribbean Group f/k/a Royal Caribbean Cruises, Ltd., Case No. 1:24-cv-21608-BB (S.D. Fla.)*.

17. Defendant, at all relevant times, was aware of applicable industry safety standards governing the operation, maintenance, and inspection of water slides and amusement rides, including ASTM F2376 (Standard Practice for Classification, Design, Manufacture, Construction, and Operation of Water Slide Systems), ASTM F770 (Standard Practice for Ownership, Operation, Maintenance, and Inspection of Amusement Rides and Devices), and the International Safety Management ("ISM") Code. Furthermore, binding international law and regulations require the Vessel to have both a Planned Maintenance Management System and a Safety Management System, which require the Vessel to conduct mandatory periodic inspections through which Defendant should have known of the dangerous conditions and non-compliance with the foregoing safety standards.

**<u>COUNT I – GENERAL NEGLIGENCE</u>**

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through seventeen (17) as though alleged originally herein.

18. At all material times, Defendant owed Plaintiff, a passenger, a duty to exercise reasonable care under the circumstances for Plaintiff's safety.

19. On the Incident Date, Defendant, through its agents, employees, and/or crewmembers, breached its duty to exercise reasonable care under the circumstances through one or more of the following acts and/or omissions:

a. Failing to operate the subject waterslide in a reasonably safe manner so as to prevent riders, including Plaintiff, from being thrown or forced into its sidewall;

b. Instructing and/or requiring riders, including Plaintiff, to go down the subject waterslide headfirst, even though Defendant knew or should have known that riding headfirst was an unsafe method of going down the slide;

c. Failing to properly configure the subject waterslide, including the portion near its exit, in light of the area in which it would be used;

d. Failing to provide a mechanism and/or proper water pressure to allow riders to slow down safely as they approached the end of the subject waterslide;

e. Failing to provide a reasonably safe exit area for the subject waterslide;

f. Failing to adequately staff the subject waterslide with trained crewmembers, including at the end of the slide;

g. Failing to reasonably inspect the subject waterslide to ensure it was in a reasonably safe condition for passenger use;

h. Failing to maintain the subject waterslide in a reasonably safe condition;

i. Failing to provide adequate warnings, instructions, safeguards, supervision, or monitoring for riders of the subject waterslide;

j. Failing to reasonably train its crewmembers to identify and correct hazardous ride conditions on the subject waterslide;

k. Failing to remove the subject waterslide from service when it was not in a reasonably safe condition for passenger use;

l. Failing to implement and enforce reasonable policies and procedures for the operation, inspection, and maintenance of the subject waterslide; and/or

m. Otherwise failing to exercise reasonable care under the circumstances.

20. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

21. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 14-17, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

22. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's head and body, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, and incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, EMALY BRANTINGHAM, demands judgment for all damages recoverable under the law against Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

**COUNT II – NEGLIGENT FAILURE TO WARN**

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through seventeen (17) as though alleged originally herein.

23. At all material times, Defendant owed Plaintiff a duty to exercise reasonable care under the circumstances, including the duty to warn Plaintiff of dangers of which Defendant knew or should have known and which were not open and obvious to Plaintiff.

24. Plaintiff used the subject waterslide, a passenger attraction that Defendant offered aboard the Vessel and invited passengers such as Plaintiff to use.

25. On the Incident Date, Defendant breached its duty to warn Plaintiff through one or more of the following acts and/or omissions:

a. Failing to warn Plaintiff of the risk of being forcefully propelled or thrown into the sidewall of the subject waterslide near its exit;

b. Failing to warn Plaintiff of the dangerous condition(s) of the subject waterslide described above;

c. Failing to warn Plaintiff of the dangers of going down the subject waterslide headfirst;

d. Failing to warn Plaintiff of the dangers and risks associated with the water pressure on the subject waterslide and with slowing down and stopping at the end of the slide;

e. Failing to warn Plaintiff of prior similar incidents in which passengers were injured on Defendant's waterslides;

f. Failing to provide adequate instructions, signage, and/or verbal warnings to riders regarding the risk of striking the sidewall of the subject waterslide; and/or

g. Otherwise failing to reasonably warn Plaintiff of the dangerous condition.

26. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

27. At all material times, Defendant knew of the foregoing conditions causing

Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 14-17, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

28. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's head and body, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, and incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, EMALY BRANTINGHAM, demands judgment for all damages recoverable under the law against Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT III – NEGLIGENT FAILURE TO MAINTAIN

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through seventeen (17) as though alleged originally herein.

29. At all material times, it was the duty of Defendant to maintain the subject Vessel, and the subject waterslide in particular, in a reasonably safe condition under the circumstances.

30. On the Incident Date, Defendant breached its duty to maintain the subject waterslide in a reasonably safe condition through one or more of the following acts and/or

omissions:

a. Failing to reasonably inspect the subject waterslide, including the portion near its exit, for conditions that could cause riders to be thrown or forced into its sidewall;

b. Failing to reasonably test the subject waterslide before opening it to passengers to confirm that riders could traverse it safely;

c. Failing to maintain, adjust, and/or repair the subject waterslide, including its water flow, riding surfaces, and other operating components, so that riders could traverse it safely;

d. Failing to adequately control and/or maintain the water pressure on the subject waterslide in a manner that allows riders to slow down and stop safely;

e. Failing to remove the subject waterslide from service when it was not in a reasonably safe condition for passenger use; and/or

f. Failing to implement and enforce reasonable inspection and maintenance procedures for the subject waterslide.

31. All or some of the above acts and/or omissions by Defendant, its agents, employees, and/or crewmembers, directly and proximately caused and/or contributed to Plaintiff being severely injured.

32. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 14-17, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

33. As a direct and proximate result of the negligence of Defendant, Plaintiff was

injured about Plaintiff's head and body, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, and incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, EMALY BRANTINGHAM, demands judgment for all damages recoverable under the law against Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT IV – VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) FOR THE NEGLIGENCE OF DEFENDANT'S CREWMEMBERS

Plaintiff realleges, adopts, and incorporates by reference the allegations contained in paragraphs one (1) through seventeen (17) as though alleged originally herein.

34. Upon information and belief, on the Incident Date, Defendant assigned specific crewmembers to operate, attend, supervise, monitor, inspect, and maintain the subject waterslide.

35. The crewmembers assigned to operate, attend, supervise, monitor, inspect, and maintain the subject waterslide were employees, crewmembers, and/or agents of Defendant, acting within the course and scope of their employment and in furtherance of the business and mission of Defendant's Vessel.

36. At all material times, it was the duty of Defendant's crewmembers to provide Plaintiff with reasonable care under the circumstances, including the duty to operate, supervise, monitor, inspect, and maintain the subject waterslide and to warn riders of its dangerous conditions.

37. On or about the Incident Date, Defendant's crewmembers breached their duty to

provide Plaintiff with reasonable care under the circumstances through the following acts and/or omissions:

a. Failing to operate the subject waterslide in a reasonably safe manner;

b. Instructing and/or requiring Plaintiff to go down the subject waterslide headfirst, even though this was an unsafe method of going down the slide;

c. Failing to adequately staff the end of the subject waterslide with crewmembers trained to assist riders and slow them down as they approached the end of the slide;

d. Failing to reasonably inspect and test the subject waterslide before and during its operation on the Incident Date;

e. Failing to reasonably supervise and monitor the operation of the subject waterslide and its riders;

f. Failing to give adequate instructions and warnings to riders, including Plaintiff; and/or

g. Failing to close the subject waterslide or remove it from service when it was not in a reasonably safe condition.

38. All or some of the above negligent acts and/or omissions by Defendant's crewmembers directly caused and/or contributed to Plaintiff being severely injured and occurred while the crewmembers were engaged in furtherance of the business of Defendant's Vessel; accordingly, Defendant is vicariously liable for their negligence.

39. Defendant is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case, Defendant's waterslide attendants' and maintenance personnel's negligent acts caused Plaintiff's injuries.

40. As a direct and proximate result of the negligence of Defendant's crewmembers, employees, and/or agents, Plaintiff was injured about Plaintiff's head and body, suffered physical pain, mental anguish, loss of enjoyment of life, disability, physical impairment, inconvenience, and incurred medical expenses and treatment-related costs in the care and treatment of Plaintiff's injuries. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, EMALY BRANTINGHAM, demands judgment for all damages recoverable under the law against Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN GROUP, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

Dated: October 1st , 2026

Respectfully submitted,

By: *<u>/s/ Griffin Sher</u>*
Griffin W. Sher
FBN: 1023219
*Morgan & Morgan, P.A.*
*703 Waterford Way #1000,*
*Miami, FL 33126*
*Phone: (786)450-5829*
*Counsel for the Plaintiff*